STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION
AND CAROLINA POWER & LIGHT COMPANY v. ROBERT MOR-
GAN, ATTORNEY GENERAL

No. 7210UC650

(Filed 22 November 1972)

1. **Utilities Commission § 6— interim rate increase — authority of Utilities Commission**

     The Utilities Commission had authority to enter an interim order allowing a power company's initially requested rate increase to go into effect pending final determination of the case, subject to the refund with interest of any portion of the increase ultimately determined to be excessive. G.S. 62-134.

2. **Utilities Commission § 6— interim rate increase — preliminary hearing**

     When a utility files a new or revised rate with the Utilities Commission, the Commission has the discretion to (1) act promptly and suspend the rate for up to the maximum period it is permitted to do so, (2) hold a preliminary hearing to receive additional evidence and information, and (3) in the clearer light furnished by the additional information so acquired, reconsider its original order and either modify it or cancel it altogether, as the situation may require.

3. **Utilities Commission § 6— general rate case — interim rate increase**

     Contention that no rate increase may be allowed to become effective in a "general rate case" except after approval of such new rate upon final consideration and determination of all factors as required by G.S. 62-133 is untenable.

4. **Utilities Commission § 6— interim rate increase — preliminary hearing on affidavits**

     It was appropriate for the Utilities Commission to hold a public hearing and make findings upon the basis of affidavits in determining whether to permit an interim rate increase.

5. **Utilities Commission § 6— interim rate increase — ability to render service**

     A power company is not required to present evidence that its ability to render electrical service is "in immediate jeopardy" before the Utilities Commission may allow it an interim rate increase.

APPEAL by Attorney General from order of the North Carolina Utilities Commission in Docket No. E-2, Sub 201.

On 3 May 1971 Carolina Power & Light Company (CP&L) filed application with the North Carolina Utilities Commission (Commission) for authority to increase by 5.63% its rates and charges for retail electrical service. Included in this application

was a request that the new rates become effective on 17 May 1971 upon condition that CP&L undertake to refund to its customers affected thereby the amount, if any, collected under the requested new rates in excess of the amount which would have been collected under rates finally determined to be fair and reasonable, with interest upon any such excess. In the alternative, CP&L requested that the Commission withhold decision on suspension of the new rates pending hearing by the Commission on a date set by it to be held on or before 17 May 1971, at which hearing CP&L would be afforded opportunity to present evidence in support of its request that the new rates not be suspended upon conditions of refund pending final hearing and determination. CP&L further requested that following such preliminary hearing, if such preliminary hearing should be required by the Commission, the new rates become effective 3 June 1971, subject to refund and such other conditions as the Commission deemed just and proper. An Undertaking for Refund was attached to and filed with CP&L's application.

By order of 7 May 1971 the Commission declared this proceeding to be a general rate case, ordered that the proposed rates should be suspended pursuant to G.S. 62-134 for a period of 270 days from the time said rates would have gone into effect on 3 June 1971, "unless otherwise determined by Order of the Commission," and set CP&L's request to place the new rates into effect immediately, including removal of said suspension, for hearing on oral argument and affidavits to be heard on 16 June 1971. The order also set the application for final hearing and determination on the ultimate merits as a general rate case for 2 November 1971, and directed that the test period for data and evidence in this proceeding under G.S. 62-133 should be the twelve months' period ending on 30 June 1971. As directed by the Commission, CP&L published notice of the 16 June 1971 hearing and mailed notice to its customers. Petitions to intervene were filed by, and orders allowing intervention were entered for, ElectriCities of North Carolina, the U. S. Department of Defense, and the Attorney General of North Carolina for the using and consuming public.

On 16 June 1971 the public hearing was held as scheduled on CP&L's request that the new rates be put into immediate effect, subject to refund, pending final determination. At this hearing affidavits setting forth the factual basis for its appli-

cation were presented by CP&L, affidavits in opposition were filed by the Attorney General, and the Commission's own staff presented detailed reports and memoranda verified by affidavit of the Commission's Director of the Department of Engineering reviewing CP&L's already incurred and expected fuel expenses. Oral argument was presented by counsel.

On 30 June 1971 the Commission entered an order, joined in by a majority of its members, withdrawing and canceling the suspension of the proposed new rates and permitting the new rates to become effective on all sales and services made and rendered by CP&L on and after 1 July 1971. The authorization to place the new rates into immediate effect was specifically conditioned upon repayment by CP&L to its customers, with interest, of such amount, if any, to be collected under the new rates in excess of the amount which would have been collected under rates and charges finally determined to be fair and reasonable upon a final determination of this matter. In its order of 30 June 1971 the Commission made extensive "Interim Findings of Fact" on the basis of the affidavits which had been presented to it, and on these findings concluded that CP&L had shown good cause to have the proposed new rates be made effective immediately and that the granting of the interim emergency relief applied for was in the public interest. The order also directed CP&L to file with the Commission monthly profit and loss statements and balance sheets and monthly reports detailing its cost of fuel, both purchased and consumed.

On 30 July 1971 the Attorney General petitioned this Court for a writ of certiorari to review the Commission's order of 30 June 1971, asserting, among other things, that the order was in excess of the Commission's lawful authority. The petition was denied by this Court on 11 August 1971.

On 30 August 1971 CP&L filed an amendment to its original application in which it sought authority to make an across-the-board increase of 19.63% in its retail rates and charges. Public hearings were held by the Commission on the amended application from 2 November 1971 through 12 November 1971. At these hearings CP&L and the Commission staff offered extensive testimony and exhibits and opinions of expert witnesses concerning CP&L's plant and operations, its rate of return, its fuel costs and purchasing practices, its construction program, and its interest charges incurred as expenses during

the twelve-month-test period ending on 30 June 1971. Public witnesses also testified, both in support and in opposition to CP&L's application.

Following these public hearings and after receiving briefs of the parties, the Commission entered its final order on 17 February 1972. In this order the Commission made extensive findings of fact on the basis of which it concluded, among other things, that in order for CP&L to attract the capital funds required for its construction program its earnings must be maintained on a level substantially higher than it experienced during the test year which ended on 30 June 1971, during which period its earnings had dropped sharply; that this decline in earnings was occasioned principally by higher interest expense and higher fuel cost; that such higher fuel cost was the most critical factor affecting CP&L's earnings; that most of the increased cost of fuel was due to market conditions beyond CP&L's control; and that "CP&L obviously must improve its earnings over that of the test year." Based on these findings, the Commission found and concluded that a flat across-the-board increase of 14.38% on all of CP&L's metered rates was necessary, just and reasonable. This 14.38% increase included the 5.63% interim rate increase which had previously been allowed in the Commission's order of 30 June 1971, and the final order expressly provided that upon placing the 14.38% rate increase in effect on service rendered on and after 1 March 1972, the interim rate increase approved on 30 June 1971 should be terminated "as being included in the final rate found to be just and reasonable herein."

Following entry of the final order of the Commission on 17 February 1972, the Attorney General appealed.

*Attorney General Robert Morgan by Deputy Attorney General Jean A. Benoy, for the Using and Consuming Public, appellant.*

*Joyner & Howison by Robert C. Howison, Jr.; and Sherwood H. Smith, Jr. and Thomas E. Capps, for Carolina Power & Light Company, appellee.*

*Commission Attorney Edward B. Hipp and Assistant Commission Attorneys Maurice W. Horne and William E. Anderson for North Carolina Utilities Commission.*

PARKER, Judge.

[1] By this appeal appellant in no way challenges validity of the final order entered 17 February 1972 in which the Commission found a rate increase of 14.38% to be just and reasonable. His sole challenge is to the interim order entered 30 June 1971 allowing the initially requested rate increase of 5.63.% to go into effect pending final determination of the case, on condition that any amounts ultimately determined excessive must be refunded. Appellant contends that in entering this order the Commission exceeded its statutory authority. We do not agree.

G.S. 62-134 is as follows:

"Change of rates; notice; suspension and investigation.—

"(a) Unless the Commission otherwise orders, no public utility shall make any changes in any rate which has been duly established under this chapter, except after thirty (30) days' notice to the Commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. The public utility shall also give such notice, which may include notice by publication, of the proposed changes to other interested persons as the Commission in its discretion may direct. All proposed changes shall be shown by filing new schedules, or shall be plainly indicated upon schedules filed and in force at the time and kept open to public inspection. The Commission, for good cause shown in writing, may allow changes in rates without requiring the thirty (30) days' notice, under such conditions as it may prescribe. All such changes shall be immediately indicated upon its schedules by such public utility.

"(b) Whenever there is filed with the Commission by any public utility any schedule stating a new or revised rate or rates, the Commission may, either upon complaint or upon its own initiative, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate or rates. Pending such hearing and the decision thereon, the Commission, upon filing with such schedule and delivering to the public utility affected thereby a statement in writing of its reasons therefor, may, at any time before they

become effective, suspend the operation of such rate or rates, but not for a longer period than 270 days beyond the time when such rate or rates would otherwise go into effect. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate shall go into effect at the end of such period. After hearing, whether completed before or after the rate goes into effect, the Commission may make such order with respect thereto as would be proper in a proceeding instituted after it had become effective.

"(c) At any hearing involving a rate changed or sought to be changed by the public utility, the burden of proof shall be upon the public utility to show that the changed rate is just and reasonable."

The procedures provided in G.S. 62-134 were correctly followed in the present case. When, on 3 May 1971, applicant filed for an increase of 5.63% in its rates to become effective on 3 June 1971, it was proceeding in accordance with G.S. 62-134(a) which requires, "[u]nless the Commission otherwise orders," 30 days' notice to the Commission of "any changes in any rates" stating the time when the changed rates would go into effect. At the time of its initial filing on 3 May 1971, applicant requested further, in accordance with the express language of G.S. 62-134(a), "for good cause shown in writing" in its verified application and exhibits, that the new rates be allowed to become effective in less than 30 days, to wit, on 17 May 1971. The Commission did not grant this further request to allow the change in rate to go into effect without requiring the 30 days' notice, as "for good cause shown in writing" it had discretionary authority but was not required to do by G.S. 62-134(a), nor did the Commission allow the new rates to become effective at the end of the 30 days' notice period on 3 June 1971. Instead, within the 30 days' notice period and on 7 May 1971, the Commission, acting under the authority granted it by G.S. 62-134(b), proceeded to suspend the new rates for 270 days and set applicant's request to put the rates into effect on an interim basis for hearing on 16 June 1971. In this order of 7 May 1971 the Commission expressly provided that the 270-day suspension should remain effective "unless otherwise determined by Order of the Commission." Following the hearing held on affidavit and oral argument on 16 June 1971, the Commission entered the order of 30 June 1971 here challenged, in

which it withdrew its previous suspension of the new rates and allowed them to become effective subject to refund pending final hearing and determination. In so doing, in our opinion, the Commission acted in all respects within its statutory authority.

G.S. 62-134(b) provides that pending hearing and determination concerning the lawfulness of new or revised rates, the Commission *"may,* at any time before they become effective, suspend the operation of such rate or rates, but not for a longer period than two hundred seventy (270) days beyond the time when such rate or rates would otherwise go into effect." (Emphasis added.) While this language gives the Commission authority to suspend changes in rates subject to the time limitation imposed, clearly it does not *require* that it do so. The language is permissive, not mandatory. Further, nothing in the statute indicates a legislative intent that once the Commission exercises its discretionary power and suspends rates, it thereby necessarily exhausts its authority in that regard so as thereafter to be precluded from withdrawing or modifying the suspension. The authority to suspend rates for not more than 270 days clearly includes the power to suspend them for some lesser period. Implicit within the authority granting discretion of whether and for how long to suspend, is the discretion to cancel or modify a suspension once it has been made, and nothing in the language of the statute suggests that the Legislature intended that the Commission could exercise the discretionary authority granted it only if it did so on an all-or-nothing, once-and-for-all basis. Indeed, a more reasonable interpretation is that the Legislature intended that the Commission might, though it was not required to do so, follow exactly the procedure which it followed here.

[2] The Commission is granted authority in G.S. 62-134(b) to suspend rates, but only if it acts "at any time before they become effective." Normally this will be at the end of the 30 days' notice period provided for in G.S. 62-134(a), a brief time within which to act. If it does nothing, the new rates become effective at the end of the 30 days' notice period. If it acts to suspend the rates, it must deliver to the public utility affected "a statement in writing of its reasons therefor." There seems little purpose in requiring such a statement unless it be useful in connection with further proceedings. It is, therefore, entirely consistent with the statutory procedure contemplated by G.S.

62-134 that upon the filing with it by a utility of a new or revised rate, the Commission, if it does exercise its discretion to suspend such rate, shall (1st) act promptly and suspend the rate for up to the maximum period it is permitted to do so; (2nd) hold a preliminary hearing, if the Commission should deem this desirable, to receive additional evidence and information; and (3rd) in the clearer light furnished by the additional information so acquired, reconsider its original order and either modify it or cancel it altogether, as the situation may require. This, essentially, was what was done in the present case, and in this we find no error.

Had the Commission failed to withdraw its suspension in the present case, a gross unfairness would have resulted to the utility. After extensive evidentiary hearings based on a test period ending on 30 June 1971, the Commission found and determined that a 14.38% rate increase, far more than the 5.63% increase allowed as result of the interim order, was just, fair and reasonable. No exception has been taken to that determination and it is conclusive on this appeal. Regulatory lag deprived the utility of the benefit of the full increase found fair and reasonable for the entire time during which, but for such lag, it would have been entitled to receive the same. Its customers have no just cause to complain simply because during a portion of that time they were required to pay only a part of the increase to which the utility was ultimately found justly entitled. Had it finally been determined that the interim increase allowed was too high and the customers were required to pay too much, their rights were protected by the requirement that the excess be refunded with interest. No similar adjustment in favor of the utility was imposed in the event, as occurred, that the interim increase was too low.

[3]   Appellant's contention that no rate increase in a case such as this, which was declared by the Commission as directed by G.S. 62-137 to be a "general rate case," may be allowed to become effective except after approval of such new rate upon final consideration and determination of all factors as required by G.S. 62-133, is without merit. Adoption of such a contention makes meaningless the language relating to suspension of new or revised rates contained in G.S. 62-134 and is patently at variance with the regulatory system contemplated by G.S., Chap. 62.

[4, 5]   Appellant's further contention that in entering its order of 30 June 1971 the Commission acted arbitrarily and capriciously is simply not supported by the record. On the contrary, the record discloses that the Commission acted carefully and deliberately in exercising the discretion granted it by statute to suspend or not to suspend the new rates pending its final determination of this general rate case. While not required to do so, it held a public hearing after due notice before making its decision. Because of the necessity of making a prompt decision, it was appropriate to hold such a hearing and to make findings upon the basis of affidavits. The facts found by the Commission were fully supported by affidavits and other evidence presented to it. These findings in turn support the Commission's order, which was in any event discretionary with it, to withdraw the suspension and to permit the new rates to become effective pending final determination. Appellant's contention that before such an order can be justified the utility was required to present evidence that its ability to render electrical service was "in immediate jeopardy" is without merit. Nothing in our applicable statutes would support reading into them such a drastic limitation upon the discretionary authority which the Legislature has expressly vested in the Commission.

The actions and orders of the Utilities Commission appealed from in this case are

Affirmed.

Judges CAMPBELL and MORRIS concur.